**O**

# United States District Court
# Central District of California

VIACOMCBS INC.

               Plaintiff,

    v.

GREAT DIVIDE INSURANCE
COMPANY,

               Defendant.

AND RELATED COUNTERCLAIM

Case № 2:21-cv-00400-ODW (AFMx)

**ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT [52] [53]**

## I.        INTRODUCTION

ViacomCBS, Inc. brings suit against Great Divide Insurance Company, seeking insurance coverage for losses ViacomCBS incurred due to the COVID-19 global pandemic.  ViacomCBS and Great Divide each move for partial summary judgment ("Motions").  (ViacomCBS Mot. Summ. J. ("VMPSJ"), ECF No. 52; Great Divide Mot. Summ. J. ("GDMPSJ"), ECF No. 53.)    The Motions are  fully  briefed. (GD Opp'n, ECF No. 55; V Reply, ECF No. 58; V Opp'n, ECF No. 56; GD Reply, ECF No. 57.)  For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** ViacomCBS's Motion and **GRANTS** Great Divide's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND

ViacomCBS is a global media and entertainment company that creates and distributes content across various platforms to audiences around the world. (VMPSJ 6.)    In December 2018, ViacomCBS bought a Television Production Portfolio Policy (the "Policy") from Great Divide Insurance Company.  (ViacomCBS Statement of Uncontroverted Fact ("VSUF") 1, ECF No. 52-2 (citing Decl. Barrie Wexler ISO VMPSJ ("Wexler Decl. ISO VMPSJ") Ex. A (Policy CIM 7508608-10), ECF Nos. 52-21, 52-22).)

### A.    The Policy

ViacomCBS purchased the Policy to insure declared productions against delay, cancellation, or abandonment caused by a covered cause of loss.  (VSUF 2.)    The "Policy Period" was comprised of three annual anniversary policy periods.  (Decl. Michael A. Harris ISO GDMPSJ ("Harris Decl. ISO GDMPSJ") Ex. A (Policy CIM 7508608-11) at GD0074, GD0083, GD0119, ECF Nos. 53-5,[2] 53-11.)    The anniversary policy periods were: (1) December 1, 2018, to December 1, 2019 (CIM 7508608-10); (2) December 1, 2019, to December 1, 2020 (CIM 7508608-11); and (3) December 1, 2020, to December 1, 2021.  (Policy GD0119.)  Policy rates were guaranteed for the first and second annual policy periods, and Great Divide retained the right after the second policy period to "review rates and revise for the third annual policy period." (*Id.*)

The Policy provides multiple coverages, including, as relevant here, Cast Coverage and Extra Expense Coverage.   (Policy GD0091, GD0103.)   The Cast Coverage Insuring Agreement covers losses resulting from any "Covered Person" or "Undeclared Cast" "being necessarily prevented by their death, injury or sickness . . .

---

[2] The material terms of the Policy document issued in 2018 and the Policy document dated as effective in 2019 are identical.  (*Compare* Wexler Decl. ISO VMPSJ Ex. A, *with* Harris Decl. ISO GDMPSJ Ex. A.)  Unless otherwise noted, the Court cites to Policy document CIM 7508608-11, effective December 1, 2019, as the "Policy," using Great Divide's Bates label numbers for any pincites.

from commencing or continuing or completing their respective duties in an Insured Production." (Policy GD0091 (¶¶ I., I.B.).) The Extra Expense Insuring Agreement covers losses sustained "by reason of such extra expense [ViacomCBS] necessarily incur[s] in the event of the interruption, postponement or cancellation of an Insured Production" as a direct result of, as relevant here, actions of a Civil Authority "that revoke[] [ViacomCBS's] permission to use or prohibits access" to its production facilities, (Policy GD0103 (¶ V.B.4.)), and "imminent peril," (Policy GD0104 (¶ V.B.5.)).

The Policy also includes a Due Diligence Clause, applicable to all coverages. (Policy GD0085 (¶ I.L.).) Pursuant to the Due Diligence Clause, ViacomCBS "shall use due diligence and do and concur in doing all things reasonably practicable to avoid or diminish any loss or any circumstances likely to give rise to a loss or claim insured under this [P]olicy." (*Id.*) The provision continues, "This [P]olicy will indemnify [ViacomCBS] for [its] ascertained net loss of additional incurred expenses and/or increased costs necessarily incurred . . . to avoid or diminish any such loss or claim, subject to" deductible and maximum liability limits. (*Id.*)

**B.     The Productions and the Pandemic**

Two of the productions ViacomCBS declared under the Policy are (1) *Goldie's Oldies*, a Nickelodeon International sitcom series filmed outside Manchester, England, (VSUF 30–31), and (2) the *2020 Kid's Choice Awards* ("*2020 KCAs*"), a live awards ceremony produced in Los Angeles, California, (Great Divide Statement of Uncontroverted Fact ("GDSUF") 10–11, ECF No. 53-2). Both productions were scheduled for production in 2020.

In January 2020, the Centers for Disease Control and Prevention and the World Health Organization ("WHO") confirmed the global person-to-person spread of a highly contagious virus and its resulting disease, COVID-19. (VSUF 22–23, 25.) By March 2020, the WHO declared the outbreak a global pandemic, (VSUF 26), and the governments in the United Kingdom and the United States directed the public to stay

at home and avoid large gatherings, (VSUF 38; ViacomCBS Statement of Genuine Disputes and Additional Material Facts ("VAMF") 42–44, ECF No. 56-16).

### 1. Goldie's Oldies

Filming for *Goldie's Oldies* began in January 2020 and was scheduled to end by August 3, 2020. (VSUF 31–32.) However, in March 2020, the producers shut down production after (1) learning that cast members had been exposed to COVID-19, and (2) in light of UK government directives. (VSUF 33–38.) The production team developed COVID-19 safety protocols in consultation with medical experts and guidance from the UK government and National Health Service. (VSUF 40–49.) The protocols included maintaining a COVID-19 team on set, designating working zones and on-set traffic flow patterns, administering daily temperature checks and COVID-19 questionnaires, testing cast and crew for COVID-19 weekly, and cleaning and disinfecting all set materials regularly. (VSUF 50–59.) When *Goldie's Oldies* resumed filming in August 2020, the production implemented these COVID-19 protocols. (VSUF 50.) Filming concluded on November 24, 2020. (VSUF 60.)

ViacomCBS requested coverage for the costs incurred due to the COVID-19 protocols pursuant to the Due Diligence provision of the Policy. (*See* VSUF 61.) Great Divide responded with a letter reserving its rights, but has not yet approved or denied the claim. (Great Divide Statement ("GDAMF") 35–41, ECF No. 55-2.[3])

### 2. 2020 Kid's Choice Awards

The *2020 KCAs* was scheduled to take place live on March 22, 2020, at the Los Angeles Forum. (GDSUF 11.) The Kid's Choice Awards event features between 75 and 100 celebrity guests and performers and traditionally draws a live audience of tens of thousands. (VAMF 31–36.) However, in March 2020, government officials in

---

[3] Great Divide confusingly titles its document raising additional material facts as a "Statement of Genuine Disputes," (ECF No. 55-2), and its document raising genuine disputes as a "Response," (ECF No. 55-1). Great Divide also does not comply with the Court's requirement that additional material facts be numbered consecutively following the moving party's facts. (*See* Scheduling Order 7, ECF No. 25.) For clarity and consistency, the Court cites Great Divide's additional facts as "GDAMF," (ECF No. 55-2), and its "Response" as "GDSGD," (ECF No. 55-1).

California and Los Angeles directed that, due to the spread of COVID-19, large gatherings should be rescheduled or cancelled. (VAMF 42–44.) Accordingly, Nickelodeon postponed, and ultimately cancelled, the *2020 KCAs*. (VAMF 45–49; GDSUF 13.)

ViacomCBS submitted an abandonment claim for the costs incurred prior to and after abandoning the *2020 KCAs*, pursuant to Extra Expense Coverage. (VAMF 50–51.) Great Divide has not paid this claim and denies that costs incurred prior to abandonment come within the Policy's Extra Expense Coverage. (VAMF 53; GDMPSJ 8; *see also* Countercl. ¶¶ 43–48, ECF No. 18.)

**C.  The Notice of Non-Renewal**

On September 28, 2020, Great Divide sent ViacomCBS a "Notice of Nonrenewal of Insurance" regarding the Policy. (VSUF 63–64; GDAMF 17–18.) The Notice stated that Great Divide would "not renew" the Policy "when it expires," and that coverage would therefore cease on December 1, 2020. (Wexler Decl. ISO VMPSJ Ex. B ("Nonrenewal Notice"), ECF No. 52-23.)

**D.  This Litigation**

ViacomCBS brings claims against Great Divide for breach of contract, breach of the duty of good faith and fair dealing, and declaratory relief with respect to coverage for its COVID-19-related claims on more than 100 productions. (*See* VMPSJ 7.) Great Divide brings a counterclaim against ViacomCBS for declaratory relief regarding Great Divide's obligations regarding coverage and the validity of its nonrenewal. (*See* Countercl. ¶¶ 1, 25–58.)

The parties have resolved more than 95 of the approximately 145 television production claims made under the Policy. (GDSUF 1.) However, with respect to some of the remaining larger claims, they disagree about which losses are covered and to what extent. (*See* Joint Stip., ECF No. 61.) Thus, to streamline this litigation, the parties now focus on the claims regarding *Goldie's Oldies* and the *2020 KCAs*, as "test claims" that present issues common to the remaining claims in dispute. (*Id.*) The

parties each move for partial summary judgment, seeking adjudication of discrete issues material to the test claims.

### III.    EVIDENTIARY MATTERS

ViacomCBS and Great Divide each request judicial notice of various materials. (ViacomCBS Reqs. Judicial Notice ("VRJN"), ECF Nos. 52-3, 56-11; Great Divide Reqs. Judicial Notice ("GDRJN"), ECF Nos. 53-3, 55-22.)   The Court **GRANTS** ViacomCBS's motion RJN, ViacomCBS's opposition RJN, and Great Divide's opposition RJN, (ECF Nos. 52-3, 55-22, 56-11), because the Court may judicially notice information made publicly available by government entities as well as publications introduced to indicate what was in the public realm at the time.  Fed. R. Evid. 201(b); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).  The Court **DENIES** Great Divide's motion RJN, (ECF No. 53-3), because the Court need not judicially notice the parties' representation to the Court to consider them, and because judicial notice is not appropriate for information found in wikis and similar crowdsourced third-party websites.  *See Cruz v. Mercedes-Benz USA, LLC*, No. 5:21-cv-809-JGB (SHKx), 2021 WL 4816862, at *1 n.1 (C.D. Cal. Aug. 12, 2021) (court record); *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1028–29 (C.D. Cal. 2015) (wiki).

ViacomCBS and Great Divide each object to specific items of evidence. (ViacomCBS Objs., ECF Nos. 56-17, 58-9; Great Divide Objs., ECF Nos. 55-3, 57-1, 60.)   The Court has reviewed and evaluated each of the objections and finds it "unnecessary and impractical . . . to methodically scrutinize each objection and give a full analysis of each argument raised."  *See Doe v. Starbucks, Inc.*, No. 8:08-cv-0582-AG (CWx), 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009).   Accordingly, the Court addresses the objections in the following categories.  First, where the challenged evidence is unnecessary to the resolution of the summary judgment motions or supports facts not in dispute, the Court need not resolve objections to that evidence

here.  *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1122 (E.D. Cal. 2006).  Additionally, evidence that could be presented in an admissible form at trial may be considered on summary judgment and therefore objections on this basis are **OVERRULED**.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003).  Moreover, the Court disregards all boilerplate objections and improper argument, statements of law, or legal conclusions in statements of fact or of dispute.  (*See* Scheduling Order 7–9.)  Finally, to the extent the Court relies on challenged evidence without discussion, objections to that evidence are **OVERRULED**.  The Court will rule on any remaining objections, as necessary, below.  *See Burch*, 433 F. Supp. 2d at 1122 (ruling on evidentiary objections only as necessary).

## IV.      LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A disputed fact is "material" where it might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  *See id.*; *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a "non-moving party must show that there are 'genuine factual issues that . . . may reasonably be resolved in favor of either party.'"  *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250 (emphasis omitted)).  Courts should grant summary judgment against a party

who fails to make a sufficient showing on an element essential to her case when she will ultimately bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322–23.

In ruling on summary judgment motions, courts "view the facts and draw reasonable inferences in the light most favorable" to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted).  Thus, when parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences."  *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006).  The court considers "each party's evidence, regardless under which motion the evidence is offered."  *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).  The Court may assume that material facts claimed and adequately supported are undisputed except to the extent that such material facts are (a) included in the opposing party's responsive statement of disputes and (b) controverted by declaration or competent written evidence.  C.D. Cal. L.R. 56-3.

## V.    DISCUSSION

ViacomCBS and Great Divide move for partial summary judgment on issues that require the Court to interpret the Policy terms.  Interpretation of an insurance policy, including whether a contract provision is ambiguous, is a question of law.  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995).  "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply."  *Powerine Oil Co., Inc. v. Superior Ct.*, 37 Cal. 4th 377, 390 (2005).

Under California's "statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation."  *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 821 (1990) (citation omitted).  Courts "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it."  *Waller*, 11 Cal. 4th at 18; *AIU*, 51 Cal. 3d at 825–27.  The "clear and explicit" language of the contract is construed in

its "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage." *AIU*, 51 Cal. 3d at 822; *see id.* at 825–27 (looking to dictionary definitions for "ordinary and popular" meaning). In insurance cases, courts must interpret policy language "in context, with regard to its intended function in the policy," *Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254, 1265 (1992), and "interpret the policy as a whole, in a manner which gives force and effect to every clause," *Martin Marietta Corp. v. Ins. Co. of N. Am.*, 40 Cal. App. 4th 1113, 1122 (1995).

Where a provision is capable of more than one reasonable construction, it is considered ambiguous. *Waller*, 11 Cal. 4th at 18. Courts may not find language in a contract ambiguous in the abstract or strain to create an ambiguity where none exists. *Id.* at 18–19. "[A]mbiguous language is construed against the party who caused the uncertainty to exist." *AIU*, 51 Cal. 3d at 822 (citing Cal. Civ. Code § 1654). However, in the absence of evidence establishing one party as the primary author or "suggesting that the provisions in question were actually negotiated or jointly drafted," courts interpret any ambiguities in favor of coverage. *Id.* at 823–24; *Martin Marietta*, 40 Cal. App. 4th at 1135.

## A.   ViacomCBS's Motion[4]

ViacomCBS seeks summary adjudication of two issues: One—that the costs ViacomCBS incurred in developing and implementing COVID-19 safety protocols for *Goldie's Oldies* are covered under the Policy's Due Diligence Clause and mitigation doctrine such that Great Divide must indemnify ViacomCBS for those costs, and Two—that Great Divide's September 28, 2020 Notice of Nonrenewal of Insurance was invalid. (ViacomCBS Notice VMPSJ 2, ECF No. 52.) Great Divide opposes both issues. (GD Opp'n 1–3.)[5]

---

[4] In analyzing ViacomCBS's Motion, the Court gives Great Divide "the benefit of all reasonable inferences." *ACLU of Nev.*, 466 F.3d at 790–91; *Scott*, 550 U.S. at 378.

[5] Great Divide also contends ViacomCBS's Motion is procedurally deficient under Local Rule 7-3 and Federal Rule of Civil Procedure 56(a). Neither argument has merit.

1        *1.     Issue One—Goldie's Oldies Safety Protocols*

2        ViacomCBS argues the Court should find as a matter of law that, first,

3    ViacomCBS acted with due diligence in developing and implementing the COVID-19

4    safety protocols for *Goldie's Oldies*, which protocols were reasonably practicable

5    measures taken to avoid or diminish covered losses, meaning that, second, Great

6    Divide must indemnify ViacomCBS for these additional costs pursuant to (a) the Due

7    Diligence Clause and (b) the common law doctrine of mitigation.  (VMPSJ 7.)

8                    a.    <u>Due Diligence Clause</u>

9        The Due Diligence Clause requires ViacomCBS to "use due diligence" and do

10   "all things reasonably practicable to avoid or diminish any loss or any circumstances

11   likely to give rise to a loss or claim insured under this policy."  (Policy GD0085.)  The

12   clause unequivocally states that the Policy "will indemnify" ViacomCBS for its

13   "ascertained net loss of additional incurred expenses and/or increased costs

14   necessarily incurred . . . to avoid or diminish any such loss or claim."  (*Id.*)

15       Here, there is no dispute that ViacomCBS developed COVID-19 safety

16   protocols for the *Goldie's Oldies* production, or that it did so in consultation with

17   medical experts and guidance from the UK government.  (*See* VSUF 40–59;

18   GDSGD 40–59 (purporting to dispute ViacomCBS's statements of fact concerning the

19   protocols, but only on the basis that Great Divide did not learn of the protocols'

20   existence sooner).)  Nor does Great Divide dispute that the protocols were reasonable

21   or that they enabled the production to resume filming in August 2020, thereby

22   reducing the insured loss ViacomCBS was then incurring due to the shutdown and

23   filming delay.  (*See* GDSGD 40–60.)  Moreover, ViacomCBS designed and

24   implemented its COVID-19 safety protocols to reduce the risk of COVID-19 exposure

25   and infection amongst the cast and crew.  Thus, the protocols also served to "avoid or

26   diminish . . . circumstances likely to give rise to a loss or claim insured under this

27   policy," in that the protocols reduced the likelihood that a cast or crew member would

28   become infected or spread the infection to others, giving rise to a claim under the

Cast, Extra Expense, or other Coverages in the Policy. In light of the undisputed facts of this case and of the evolving global pandemic at that time, no reasonable jury could find that developing and implementing the *Goldie's Oldies* COVID-19 safety protocols was other than reasonably practicable to avoid or diminish a loss or claim under the Policy. *See West v. State Farm Fire & Cas. Co.*, 868 F.2d 348, 351 (9th Cir. 1989) ("[R]easonableness becomes a question of law appropriate for determination on motion for summary judgment when only one conclusion about the conduct's reasonableness is possible.").

Great Divide raises a host of distractions, arguing that partial summary judgment is not appropriate because ViacomCBS "cannot prove all the elements of breach of contract." (GD Opp'n 16.) Specifically, Great Divide argues that (1) ViacomCBS has not complied with conditions precedent; (2) Great Divide has not breached the Policy because it has not yet denied ViacomCBS's COVID-19 safety protocol claim; and (3) ViacomCBS has not established that its "ascertained net loss" was "necessarily incurred," or that the amount of the loss is within Policy limits, as required by the Due Diligence Clause. (GD Opp'n 16–24.) These arguments miss the mark. None are necessary or material to resolving the issue raised in ViacomCBS's Motion: that developing and implementing COVID-19 safety protocols for Goldie's Oldies was reasonably practicable to avoid or diminish insured loss or potential loss. Questions regarding compliance with conditions precedent, the "ascertained" amount of loss, and whether costs were "necessarily incurred," are immaterial to the Court's resolution of the issue ViacomCBS presented in its Motion.

Accordingly, the Court finds that there is no genuine dispute of material fact, and ViacomCBS is entitled to a finding as a matter of law that, pursuant to the Due Diligence Clause of the Policy, ViacomCBS's efforts in developing and implementing COVID-19 safety protocols for the production of *Goldie's Oldies* were reasonably practicable efforts taken to avoid or diminish loss or circumstances likely to give rise to a loss or claim insured under the Policy. Additionally, ViacomCBS's reliance on

medical experts and government guidance to develop the protocols, as well as the implemented protocols themselves, were reasonably practical as a matter of law for purposes of the Due Diligence Clause. Consequently, Great Divide must indemnify ViacomCBS pursuant to the Due Diligence Clause for the costs ViacomCBS incurred to develop and implement COVID-19 safety protocols for *Goldie's Oldies*.[6]

### b.   Mitigation Doctrine

ViacomCBS additionally contends that, independent of the Policy, "the common law doctrine of mitigation also requires Great Divide to reimburse ViacomCBS for expenses it incurred to reduce a greater loss." (VMPSJ 20–22.) ViacomCBS provides over a page of secondary authority and case law reciting the common law doctrine of mitigation, including from other states and Circuits. (*Id.*) However, ViacomCBS's brief is devoid of any independent analysis applying the mitigation doctrine. (*See id.*) The Court declines to assume *sua sponte* that ViacomCBS's Due Diligence Clause analysis, (VMPSJ 23–24), applies wholly and equally to the mitigation doctrine. Consequently, the Court finds that ViacomCBS fails in its burden of showing it is entitled to judgment as a matter of law on this issue.

### 2.   *Issue Two—Notice of Nonrenewal*

On September 28, 2020, Great Divide sent ViacomCBS a Notice of Nonrenewal of Insurance. (Nonrenewal Notice.) It stated, "This Notice is to advise you that we will not renew the above captioned policy when it expires. Your insurance will cease on [12/1/2020]." (*Id.*) The Notice explained that "[t]his policy is being non-renewed due to loss experience and the current uncertainty around COVID-19 exposures and their impact on coverage and liability." (*Id.*)

ViacomCBS contends that Great Divide's Nonrenewal Notice is invalid and without force or effect because the Policy is a three-year policy which Great Divide could not non-renew until the Policy's expiration in 2021, the third year. (*See*

---

[6] This conclusion does not in any way vitiate or lessen the requirements of the Due Diligence Clause that "additional incurred expenses" be "ascertained," and any increased costs be "necessarily incurred."

VMPSJ 25 (relying on Endorsement No. 6—Anniversary Policy Periods and Rating Review).)    In contrast, Great Divide contends the Policy is three, one-year policies, each with a separate expiration date on the annual anniversary, and Great Divide was therefore entitled to non-renew the Policy in 2020, the second year.    (GD Opp'n 24 (relying on Endorsement No. 5—NY Changes Cancellation and Non-Renewal").)

Endorsement No. 5 states that "[t]he insurer can non-renew the policy by mailing or delivering written notice to the Named Insured . . . [a]t least sixty (60) days but not more than one hundred and twenty (120) days . . . before: (1) The expiration date, or (2) The anniversary date if this is a continuous policy."    (Policy GD0117.) Significantly, neither party asserts, or even suggests, that the Policy qualifies as a "continuous policy" for purposes of Endorsement No. 5.[7]    As a result, for Great Divide's Notice of Nonrenewal to be effective, Great Divide must have sent it at least 60 days but not more than 120 days before the "expiration date" of the policy.

Therefore, the effectiveness of the Notice of Nonrenewal hinges on whether the Policy is a single policy with a three-year policy period expiring on December 1, 2021, as ViacomCBS argues, (VMPSJ 25; V Reply 11–13), or three separate policies, each with a one-year policy period, the second of which expired on December 1, 2020, as Great Divide argues, (GD Opp'n 24).    The Policy's Declarations page states that the Policy Period is "December 1, 2019 to December 1, 2020," which initially supports Great Divide's position.    (Policy GD0074.)    However, Endorsement No. 6 revises this Policy Period to "December 1, 2018 to December 1, 2019," and immediately clarifies that "[t]he *Policy Period* . . . is comprised of *three annual policy periods* as follows: December 1, 2018 to December 1, 2019 CIM 7508608-10[;] December 1, 2019 to December 1, 2020 CIM 7508608-11[;] December 1, 2020 to December 1, 2021."    (Policy GD0119 (emphasis added).)    As the Policy does not

---

[7] Neither ViacomCBS in its moving papers nor Great Divide in its opposition acknowledge the language in Endorsement No. 5 regarding "the anniversary date of a continuous policy."    (*See generally* VMPSJ 25–26; GD Opp'n 24–25.)    ViacomCBS quotes the language in its Reply, (V Reply 12), but does not otherwise address the notion of a "continuous policy."

define "expiration date," based on the foregoing, Endorsement No. 6 could be read to mean the Policy expires at the end of the multi-year "Policy Period," or at the end of any of the three annual "policy periods."

Yet, the above language cannot be read in isolation; it must be read in context with other provisions and endorsements. *Martin Marietta*, 40 Cal App. 4th at 1122 (instructing courts to "interpret the policy . . . in a manner which gives force and effect to every clause."); *see* Cal. Civ. Code § 1641.  Endorsement No. 6 also states that the Policy is "subject to guaranteed rates for the first and second annual policy periods," and that Great Divide has the right, "at the end of the second annual policy period," "to review rates and revise for the third annual policy period."  (Policy GD0119.) Nothing in Endorsement No. 6, or Endorsement No. 5 for that matter, expressly authorizes Great Divide to "non-renew" "at the end of the second annual policy period."  Reading the endorsements to permit Great Divide to do so would require rewriting the contract, either by inserting "or non-renew" in Endorsement No. 6,[8] or inserting "at the end of an annual policy period" in Endorsement No. 5.[9]  Such revision is impermissible.  *See Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070, 1073 (2003) ("[W]e do not rewrite any provision of any contract, [including an insurance policy], for any purpose." (alterations in original)).

As Great Divide's construction of the Policy's terms is internally inconsistent when the endorsements are read together, the Court finds it unreasonable.  That leaves only ViacomCBS's construction at issue: that the Policy is a single policy with a three-year policy period expiring on December 1, 2021.  This interpretation permits the endorsements to be read in harmony, giving meaning to Endorsement No. 6's

---

[8] This revision would read: "At the end of the second annual policy period, we have the right to review rates and revise [or non-renew] for the third annual policy period if necessary." (*See* Policy GD0119 (revised).)

[9] This revision would read: "If the Insurer decides not to renew the policy . . . the Insurer will mail or deliver written notice . . . at least sixty (60) days but not more than one hundred and twenty (120) days before: (1) The expiration date; or (2) The anniversary date if this is a continuous policy[; or (3) the end of an annual policy period]." (*See* Policy GD0117 (revised).)

potential rate revision "at the end of the second annual policy period," as well as Endorsement No. 5's non-renewal in advance of the "expiration date."   As ViacomCBS's construction does not require any strained reading or revision, the Court finds it reasonable.

Accordingly, ViacomCBS demonstrates that it is entitled to a finding that Great Divide was not permitted under the Policy to non-renew in 2020, and its Notice of Nonrenewal is invalid as a matter of law.

### 3.   Conclusion—ViacomCBS's Motion

In summary, ViacomCBS's Motion is **GRANTED IN PART** and **DENIED IN PART**.  (ECF No. 52.)  Specifically, the Court grants the Motion in part and finds the costs ViacomCBS incurred in developing and implementing COVID-19 safety protocols for *Goldie's Oldies* **are covered** under the Policy's Due Diligence Clause such that Great Divide must indemnify ViacomCBS for those costs, subject to the specifications of the Due Diligence Clause.  However, the Court denies the Motion in part and finds that ViacomCBS **does not** establish that Great Divide must reimburse ViacomCBS for these costs under the doctrine of mitigation.  Finally, the Court grants the Motion in part and finds that Great Divide's September 28, 2020 Notice of Nonrenewal of Insurance was **invalid**, and without force or effect.

## B.   Great Divide's Motion[10]

Great Divide seeks partial summary judgment on a single issue: that ViacomCBS's pre-production costs incurred prior to its abandonment of the *2020 KCAs* due to the COVID-19 pandemic do not come within the Policy's "Definition of Loss" under Extra Expense Coverage.[11]   (Great Divide Notice GDMPSJ 2–3, ECF No. 53.)

---

[10] In analyzing Great Divide's Motion, the Court gives ViacomCBS "the benefit of all reasonable inferences."  *ACLU of Nev.*, 466 F.3d at 790–91; *Scott*, 550 U.S. at 378.

[11] The parties dispute whether ViacomCBS's *2020 KCAs* claim consists solely of costs incurred prior to abandonment, (GDMPSJ 11), or includes expenditures incurred after abandonment as well, (V Opp'n 16 n.5; GD Reply 4 n.4).  This dispute is immaterial for purposes of this Motion because

Great Divide argues that the language of the Extra Expense Coverage's "Definition of Loss" provision is clear and explicit, and when the language is construed in its ordinary sense, ViacomCBS's pre-production costs do not qualify as "Loss" under Extra Expense Coverage. (GDMPSJ 3.) ViacomCBS contends the plain language of the Extra Expense Coverage "Definition of Loss" does not support Great Divide's interpretation, which ViacomCBS argues fails to consider the Policy language as a whole. (V Opp'n 5.) ViacomCBS also offers extrinsic evidence and argues it reveals a latent ambiguity, to be construed in ViacomCBS's favor, regarding the proper interpretation of the Extra Expense Coverage's "Definition of Loss." (V Opp'n 5, 21–23.)

*1. Plain Meaning*

The words of a policy should be interpreted in accordance with their "ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage." *AIU*, 51 Cal. 3d at 822 (internal quotation marks omitted); Cal. Civ. Code § 1644. If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs. Cal. Civ. Code § 1638.

As used in Extra Expense Coverage, the Policy defines "loss" in three ways. The first defines loss as "any extra expenditure" ViacomCBS incurred "in completing an Insured Production over and above" what it would have incurred, but for the happening of an insured peril. (Policy GD0106 (¶ VII.A.).) The second defines "loss" as "such actual expenditure incurred by [ViacomCBS] in an Insured Production solely and directly by reason of the happening of" the insured peril. (*Id.*) The third is what ViacomCBS refers to as the abandonment provision, and it provides that, "In the event that [an insured peril] reasonably, practically and necessarily prevents the completion of an Insured Production," ViacomCBS "will have the right to abandon production and claim under this coverage for such actual expenditures [ViacomCBS]

---

Great Divide seeks partial summary judgment only as to expenditures incurred *prior to* the abandonment. (Great Divide Notice GDMPSJ 2–3.)

incur[s] in an Insured Production solely and directly by reason of the happening of" the insured peril.[12]  (*Id.* (¶ VII.B.).)

The Court finds that the loss which ViacomCBS claims arose from abandoning the *2020 KCAs*—and here, by "loss," the Court means only those costs expended before the abandonment—does not come within the clear, ordinary meaning of any of these three definitions.  The first definition requires *extra expenditures* incurred *in completing* the production.  The *2020 KCAs* were abandoned; ViacomCBS does not contend here that it incurred extra expenditures *in completing* the *2020 KCAs*.  The first Definition of Loss does not apply.

The second and third definitions require *actual expenditures*, and the parties do not dispute that ViacomCBS's pre-production costs qualify as such.  However, both definitions also require that the expenditures be incurred *solely and directly* by reason of the insured peril.  ViacomCBS does not contend that usage gives the terms "solely" or "directly" special meaning, so the ordinary and popular sense governs.  *AIU*, 51 Cal. 3d at 822.  As the Policy does not define "solely" or "directly," (*see* Policy GD0089), resort to dictionary definitions is appropriate, *AIU*, 51 Cal. 3d at 825–27.  "Solely" means "to the exclusion of all else," and "directly" means "in a straightforward manner."  *Solely*, Merriam-Webster, https://www.merriam-webster.com/dictionary/solely (accessed Nov. 4, 2022); *Directly*, Black's Law Dictionary (11th ed. 2019); *see also Directly*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/directly (accessed Nov. 4, 2022) (defining "directly" as "without anything else being involved or in between").  Here,

---

[12] For purposes of this Motion, the Court considers "insured peril" to mean the postponement and abandonment (together, "the abandonment") of the *2020 KCAs* as a result of the COVID-19 pandemic.  The Court acknowledges that the parties' evidence reveals a lack of clarity regarding what, precisely, Great Divide contends is the "insured peril" for purposes of the *2020 KCAs* claim.  (*See* V Opp'n 16 n.4.)  However, this lack of clarity is immaterial to the Court's disposition of Great Divide's Motion.  Relatedly, the Court need not specify within which "extension of coverage" the abandonment falls, as the parties do not dispute that it does come within a covered occurrence.  (*See* GDMPSJ 5 n.5 (asserting the "Civil Authority" coverage applies); V Opp'n 15 n.3 (asserting that, at least, both the "Civil Authority" and the "Imminent Peril" coverages apply).)

ViacomCBS did not incur the *2020 KCAs* pre-production costs exclusively or straightforwardly by reason of the abandonment.  Rather, ViacomCBS incurred the costs in the ordinary course of preparing to produce a live event, before the pandemic caused California and Los Angeles to restrict gatherings and before ViacomCBS was forced to abandon the production.  ViacomCBS would have incurred the *2020 KCAs* pre-production costs regardless of COVID-19, the pandemic, or the abandonment.  As such, the second and third definitions of loss do not apply.

Based on the "ordinary and popular sense" of the Policy terms, *AIU*, 51 Cal. 3d at 822, ViacomCBS's pre-production costs incurred prior to its abandonment of the *2020 KCAs* due to the COVID-19 pandemic do not come within the Policy's Extra Expense Coverage Definition of Loss.

### 2. Policy as a Whole

Construing the Extra Expense Coverage Definition of Loss in context and with the Policy as a whole, *see* Cal. Civ. Code § 1641, does not disturb the above conclusion.  For instance, the Insuring Agreement for Extra Expense Coverage provides that Great Divide will pay the loss sustained "by reason of such extra expense as [ViacomCBS] necessarily incur[s]" in the event of cancellation "as a direct result of" an insured peril.  (Policy GD0103.)  Thus, the Insuring Agreement of Extra Expense Coverage only covers expenses that are *extra*, *necessary*, and incurred *as a direct result of* the abandonment.

ViacomCBS points to language in other sections and coverages within the Policy, and argues these other provisions reveal inconsistencies with the "ordinary and popular sense" construction above.  (V Opp'n 18–21.)  But none of the provisions on which ViacomCBS relies sufficiently undermines the direct causality required in the Definition of Loss abandonment provision under Extra Expense Coverage.  For example, ViacomCBS argues that the definition of Loss in Cast Coverage supports its position, but that definition only further bolsters the Court's conclusion in favor of Great Divide.  The Cast Coverage "Loss" definition provides that, in the event of the

disgrace of a Covered Person, ViacomCBS shall have the right to abandon the production and "claim under this section for such actual expenditures it incur[s] in an Insured Production."  (V Opp'n 20 (quoting Policy GD0094 (VI.C.)).)  These "actual expenditures" are considered a "Loss" even *without* the requirement that they be "solely and directly by reason" of, for instance, the covered person's disgrace.  That the Policy uses clear and unambiguous causality language in the Definition of Loss abandonment provision under Extra Expense Coverage, but not for the corollary Loss under Cast Coverage, supports that the contracting parties specifically intended, with respect to Extra Expense Coverage, to link any Loss to the insured peril that prompted it to be incurred.

Thus, considering the Policy as a whole does not disturb the conclusion above, that the *2020 KCAs* pre-production costs are not a covered "Loss" under Extra Expense Coverage.

### 3.   Industry Custom & Practice

Finally, ViacomCBS contends the Court should consider extrinsic evidence of industry custom and usage in interpreting the Policy.  (V Opp'n 21–22.)

Extrinsic evidence is not admissible to "add to, detract from, or vary the terms of a written contract." *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39 (1968).  However, extrinsic evidence "is admissible to prove a meaning to which the contract is reasonably susceptible." *Hewlett-Packard Co. v. Oracle Corp.*, 65 Cal. App. 5th 506, 531 (2021).  Thus, before a court can evaluate whether proffered evidence is admissible or prohibited, the court must first determine the parties' intention with respect to the contract terms.  *Pac. Gas & Elec.*, 69 Cal. 2d at 39–40; *see also Hewlett-Packard*, 65 Cal. App. 5th at 531 ("The court, at least initially, considers all credible evidence offered to prove the intention of the parties." (internal quotation marks omitted)).

ViacomCBS offers the declarations of Robert Jellen and Barrie Wexler to support the proposition that, "as a matter of custom and practice in the entertainment

insurance industry, both insurers and insureds understand that an Abandonment Loss Provision such as that contained in the Policy allows an insured to abandon a production and recover under the policy all the costs incurred in the production." (V Opp'n 21; Decl. Robert Jellen ("Jellen Decl.") ¶¶ 11–12, ECF No. 56-1; Decl. Barrie Wexler ISO V Opp'n ("Wexler Decl. V Opp'n") ¶¶ 8–9, ECF No. 56-3.) ViacomCBS also offers Jellen's and Wexler's declaration testimony that ViacomCBS's prior insurer paid similar pre-production cost claims under the Cast Coverage of an identical prior policy.  (Jellen Decl. ¶ 13; Wexler Decl. V Opp'n ¶ 10.)

As noted, the parties' inclusion of the language "solely and directly" indicates their intent to require causality for a covered abandonment Loss under Extra Expense Coverage.  ViacomCBS does not explain, in its argument or the proffered declarations, how its asserted industry custom and practice can effectively negate the clear and unambiguous terms, "solely and directly."   Furthermore, that a previous insurer covered similar pre-production claims under a different coverage section, *Cast Coverage*, is immaterial here because, even assuming identical prior policy language, as the Court noted above, the Cast Coverage abandonment provision does not include the causality required in the Extra Expense Coverage.

Based on the clear and unambiguous language of the Extra Expense Coverage Definition of Loss, the Court concludes that the parties intended to require causality for this type of Coverage.  Therefore, as the proffered extrinsic evidence seeks to "detract from, or vary" those terms, *Pac. Gas & Elec. Co.*, 69 Cal. 2d at 39, the Court finds the declarations inadmissible.[13]

### 4.   Conclusion—Great Divide's Motion

In summary, ViacomCBS's pre-production costs incurred prior to its abandonment of the *2020 KCAs* due to the COVID-19 pandemic do not come within

---

[13] Great Divide's evidentiary objections based on impermissible extrinsic evidence, to paragraphs eleven through thirteen of the Jellen Declaration and paragraphs eight through ten of the Wexler Declaration in opposition, are **SUSTAINED**.  (GD Evid. Objs. ISO GD Reply, ECF No. 57-1.)

the Policy's Definition of Loss under the Extra Expense Coverage.  Accordingly, the Court **GRANTS** Great Divide's Motion.  (ECF No. 53.)

## VI.    CONCLUSION

For the reasons and as discussed above, the Court **GRANTS IN PART AND DENIES IN PART** ViacomCBS's Motion for Partial Summary Judgment, (ECF No. 52), and **GRANTS** Great Divide's Motion for Partial Summary Judgment.  (ECF No. 53.)

**IT IS SO ORDERED.**

November 10, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**